Our final, do you need a break? I wouldn't mind one, yeah. Okay, let's take a five minute break before the last case. All rise. This court now resumes its session. Our final case on calendar is American Rivers v. American Petroleum Institute. Three case numbers 21-16958, 21-16960, and 21-16961. Each side will have 20 minutes, but I think we're dividing time. So are you taking your 20 minutes, I guess? That is correct, Your Honor. George Sibley, I represent the American Petroleum Institute, the Interstate Natural Gas Association of America. I'm arguing today on behalf of all of the appellants, and I'd like to reserve five minutes for rebuttal if I could. This case presents an exceptionally important question, namely whether federal district courts are authorized to vacate federal agency action without first finding that action arbitrary, capricious, or contrary to law based on review of the administrative record as required by the Administrative Procedures Act. The answer to that question is plainly no. This question does seem to arise with some frequency at the district court level. Indeed, by our count, district courts in the Ninth Circuit have confronted the question in 12 separate actions since the 2020 election. But for a variety of reasons, it has eluded review at the federal appellate level. We would urge the court to take the case, find jurisdiction, and resolve this important question. Now, the case here involves EPA's 2020 Clean Water Act Section 401 rule. That rule was the product of a multi-year rulemaking process and was informed by more than 100,000 public comments. The rule filled a void in EPA's regulatory structure under the Clean Water Act that had existed for 50 years. But like any major rulemaking, it drew challenge. Five lawsuits were filed challenging the rule around the country, three of which were consolidated in front of Judge Alsop. While these lawsuits were pending, the 2020 election occurred. And after President Biden took office, he directed the EPA to consider a number of rules promulgated by the Trump administration's EPA, and the 401 rule was one of them. After conducting that rule, that review, EPA concluded that it would embark on rulemaking to substantially revise the rule. It asked the district courts that were presiding over the challenges to the rule to voluntary, to remand the rule without vacator, a step that would conserve judicial resources and avoid putting the Department of Justice in the uncomfortable position of defending a rule that its client intended to address through the administrative process. The district courts in South Carolina and Pennsylvania agreed and granted EPA's motion, and Judge Alsop remanded, but also vacated the rule and thus committed substantial error. And I take it in that instance, since we have two district courts that refused to do it and one that did, that there is no res judicata that would apply as to the third district court, which ruled the other way. It's certainly not preclusive as to Judge Alsop. He was not bound by res judicata. So this is a bit like the problem of nationwide injunctions. It is very much akin to that problem. I think they're very close cousins, if not exactly the same. Now, Judge Alsop's order was unquestionably a final order within the meaning of 1291, styled final judgment. He directs the agency to act as if the rule never existed. He certainly intended to be finished with the matter, and he gave the plaintiffs in the court below all of the relief that they had requested. Well, and then he entered an order saying this case is closed and the clerk is instructed to administratively close the file. That's exactly right, Your Honor. It isn't a final order. I don't know what is. He certainly used belts and suspenders to make sure that no one was left in any doubt. Now, my friend, Mr. McCarty, will argue that this court lacks jurisdiction because the order is styled remand. But we really don't think it falls into that category of cases that is led by the Alsea Valley case, because it's really not a remand order. The district court did not review the merits of the case at all. He did not make any findings or direct the agency to do anything on remand. It was a final order in basically every sense. It uses the word remand, but there's no question that Judge Alsup doesn't expect the case to come back to him, expects EPA to complete its rulemaking and then go on its way. So, I mean, it may not matter, but a remand that's after a merits ruling or a remand that's before a merits ruling, they're both remands. I'm not sure why it matters. It's a — this point that you're saying that it's not a remand order doesn't quite make sense to me. It is a remand order, right? I mean, you're upset that it's also a vacatur order, but I think it's a remand order. That's an excellent point, Your Honor, and I would concede that, yes. It does say — it does say remand. I guess the point I'm trying to make is that it doesn't bear the characteristics of remand orders that clearly fall into the category that Alsea Valley is intended to address. I mean, you could say Alsea only applies to remands that follow merits. I think that's really your argument. That is — that is right. It certainly applies to no more than those cases. It doesn't — we would note that it doesn't apply to all remands that follow a merits determination. You have to apply the three considerations there. But we think it actually — this case actually falls entirely outside of that category just because of the peculiar nature of the ruling. Right. That's — I guess my — I'm understanding your argument to be that we look at the substance and not the form in the sense that the word remand by itself is not, you know, magic words that suddenly make the final orders non-final. Is that your point? That is — that is correct, Your Honor. What difference does it make, if any, to our analysis, if we get past the jurisdictional point, that a new rule is expected to be promulgated soon? Well, we certainly — and I'll let Mr. McArdle address exactly where that stands in terms of the administrative process. He can speak to that more authoritatively than I can. I think in the best case, it's six months out. So it's not — it's not that soon in terms of rendering a decision. We think that this is the type of question that is one that the Court should address even if EPA does act. For one thing, it has to do with — this is the type of question that is one of those that is capable of repetition. Indeed, it repeats itself. I was about to ask about mootness, and you're already talking about mootness. Because if we don't write our opinion in six months, you're moot here, right, unless you can get an exception? Yeah, I think — I think it would be capable of repetition, yet evading review. And it would be very important for the Court — for a court of appeals to address the question. I mean, we have 12 cases pending in the district courts just within the Ninth Circuit that involve challenges to rulemakings issued by the Trump administration for which EPA has sought — EPA, the agency in question, sorry, has sought remand without vacator. And you have the district courts reaching different conclusions on this very question, whether they nonetheless have the authority to vacate. So we think it's the type of question the Court should nonetheless take up. What, if anything, should we read into the Supreme Court's stay order? Well, I think you can read the following. First, that under the standard for stays in the Supreme Court, at least four justices thought that if this question was presented to them, they would vote to grant cert, and that if cert was granted, five justices would vote to reverse the district — the outcome in the district court. Does it suggest anything about jurisdiction, in your view? It does. I think it suggests that the Court believed that this Court was a final judgment and subject to review by this Court. I think we can infer that as well. And it certainly is. On finality, I would say there's three ways we can deal — we have a final judgment here. First, we think it says final judgment and it falls outside the category of All-C Valley. Even if you were to apply that All-C Valley framework, the All-C Valley, the three considerations that are identified, they're not three independent factors that must be satisfied. The Sierra Forest legacy case stands for that proposition. So they're just considerations. And two of the factors are plainly satisfied, and I would argue that all three are satisfied. First of all, it resolves a separable legal issue, and that is whether district courts have the authority to do this in the first place. And on the third factor, the third consideration, excuse me, we would be precluded from getting review of that question if it's not addressed here. We have no opportunity to have that considered. And then second, I would argue that it changes the backdrop against which EPA is currently writing the current rule. If Judge Alsup's order is given full effect and the rule is treated as if it never existed, that affects what EPA needs to do in terms of justifying its decision, rendering different conclusions about the nature of Section 401 of the Clean Water Act. I don't remember this argument in your brief. Can you elaborate on what you're saying now? Yeah, we didn't raise the argument. We don't think you need to get there. I just observed that second factor, whether it changes, it requires the agency to apply a different legal framework. That's that second consideration. We think we have something akin to that here just because it takes away the rule in its entirety, which does change the backdrop against which EPA is litigating. But you don't need to find that we've preserved that question even to rule in our favor. Is that right? Your idea would be that because the rule was vacated, the agency wouldn't have to explain why it was changing something? Perhaps not. We may argue that they do still need to make that, but it certainly changes the backdrop against which they're litigating. More important than that, it's not clear to us that EPA need complete the current rule making at all. If an objective is to scotch the rule completely, an objective of the administration, you can envision a scenario where confronted with competing demands of agency resources, this gets put on the back burner and sits there and maybe doesn't get resolved in a timely manner or on the timetable that is currently projected. And so that's the type of change we think that All-C Valley contemplates in terms of changing the legal framework that the agency is operating under. So we think you get to finality in any one of those three ways. Now, in terms of the rule itself, there seems to be no dispute that what Judge Alsop did here is not, in the rule itself, the merits of the case itself. There seems to be no dispute that what Judge Alsop did here is not authorized under the Administrative Procedures Act. The act by its plain text only allows district courts or any courts to set aside agency action that is found to be arbitrary, capricious, or contrary to law. Now, Subsection 2 lists a bunch of different factors, but they all sort of are subsumed in that general, arbitrary, capricious, contrary. He basically said, I don't see anything in the APA that precludes me from doing it because I'm now exercising my traditional equitable powers. Yeah, and we think that's wrong. And we think the best case for that is this court's precedent in the Owner-Operators Independent Drivers Association. That's 632 F3rd 1111. That case had to do with the Truth in Lending Act, but it dealt with this question of statutory construction. What do you do when Congress has clearly provided a list of things, a list of criteria? In that case, it had to do with remedies. In our case, we're dealing with criteria that would justify setting aside agency action. And when Congress has specified a list like that, I think that what the court said, we are charried to observe additional conditions. So I think that it's clear that Congress intended to address this question of when it's appropriate for federal courts to set aside federal agency action. It's a waiver of sovereign immunity. And it reflected a very careful compromise at the time about what would be allowed and when. And the fact that they didn't sort of identify this free-floating authority to set aside agency action without engaging with the legality of the agency. Counsel, let me ask you just to clarify one thing about what it is you're seeking by way of relief. As I understand it, you are seeking to undo the vacator portion of the court's decision, but that's it. There are some other suggestions that maybe there should be more, but is that the relief that you're seeking? That is correct. It is to undo the vacator portion of Judge Alsop's decision. And that's it. And that is it. OK. Now, in the time since we've, briefing has occurred, the plaintiff in the court below filed a motion for an indicative ruling from Judge Alsop. And he denied the motion and said, this is going to be resolved by the agency soon enough, and I don't intend to proceed to merits briefing. So it may be a bit of an academic dispute. Sort of. I've stuck my neck as far out on this limb as somebody saws it off. It certainly had that tenor, Your Honor. Just to make sure, you want the 2020 rule back until there's a new rule? That is correct, Your Honor. That is correct. Very quickly, an argument that the plaintiff appellees, but not EPA, raise is that federal district courts, federal courts had inherent authority as a matter of equity to do what Judge Alsop did here. And we don't think that's correct. It's a pretty extraordinary authority for judges to set aside the action of a political branch without considering actually ruling on the legality. And the cases that they cite for that don't actually stand for that proposition. And we've articulated that in our briefs. And I could do no better here than we did in those papers. Usually, when we invoke equitable authority, it's because there's a dearth of statutory or case precedent that tells us what we must do. That's exactly right. And the idea that the courts retain equitable authority, of course, is governed by a significant caveat. That's unless a statute has spoken to the matter. And here, the EPA, we think, clearly has. I see I have about six minutes left. I'm happy to reserve the remainder of that time for rebuttal if there are no further questions. You're welcome to do that. Thank you. Thank you, Your Honor. Excuse me. Good morning, and may it please the Court. I'm Kevin McCardle on behalf of the Environmental Protection Agency. And I'll be taking five minutes of appellee's time to address the two issues presented in our brief. The lack of appellate jurisdiction and the point that any relief should be limited to reversal of the vacature while leaving the remand itself intact because, as you just heard, the intervenors who were the only ones who appealed haven't challenged the remand itself. On the first issue, the Court lacks appellate jurisdiction because the remand order isn't a final order as to the intervenors under this Court's precedent. And the vacature provision isn't tantamount to an injunction against them that would make the remand order appealable under 1292A1. On the first point, maybe I'll just turn to Your Honor's observation at the beginning of my friend's argument where you suggested that this was clearly a final order. Well, I'd like to direct the Court's attention to what transpired in the Alcee Valley case because, in that case, not only did the district court enter a remand order, it was ECF-113 in the district court docket. The Court then granted the environmental organization's motion to intervene after the judgment for the sole purpose of appealing. And then in that order, and this is ECF-157, the Court said that all of the issues had been litigated to completion and that there was nothing left to do in the district court because judgment had been entered. And yet this Court still concluded that the remand order wasn't final as to the intervenors. And I think what that shows is that the district court's intent is not dispositive. What's dispositive is whether the remand order, something in the remand order will prevent the appellants, the parties seeking to appeal, from appealing the agency's final decision on remand. And that's clearly not the case here. To update the Court on the status, EPA published its proposed rule in June. There was a lengthy comment period, which closed in August, and intervenors, like everyone else, had the opportunity to present their views to the agency, which the agency will address during the remand. The agency's still on track and intends to issue a final rule in the spring, which is only six months away. Nothing in- Did it get another 100,000 comments? I'm not sure of the exact number of comments, Your Honor. I'm sure there was a substantial number, but I don't know- But they're considering whatever those comments were. Exactly. And another critical point for the finality analysis is that there's no constraint on EPA's discretion on remand. It can fashion whatever rule it wants. It can retain provisions that the intervenors are advocating for, provisions from the 2020 rule. And if it doesn't, the intervenors will have an opportunity to pursue judicial review at that time. So under this Court's precedent- But the reason there's — the reason you're talking about no constraint is you're looking at all C's factors, but why do we think all C applies at all when there's no merits determination before the remand? Because it's a remand. And the Court's analysis there wasn't linked to there being a merits determination. It was linked to the consequences of the remand and whether the Court had put constraints on the agency that would essentially- Well, I think it was linked, though, because part of what the Court said was you basically have to have a vacatur. I mean, the Court kind of thought that there wasn't really an option other than vacatur because there had been a merits determination, the rule was invalid. And so that's very much a part of the reasoning, isn't it? Well, I think there's two critical points. I think maybe the most important point I want to make is the analytical framework to draw from all C value. And that's that the finality test applies to the litigants' views on the merits. And the merits of the challenge agency action, it asks, will the litigant have the opportunity to present its views and then challenge the resulting final decision? The Court emphasized that the vacatur component didn't affect the finality analysis, okay? The vacatur component, the Court addressed separately and said, the vacatur component is not a separately appealable final order. It's simply part of the remand order. And if the remand wasn't final under the three-part test, then it's not final altogether. So in that context, perhaps the Court said something about how vacatur normally follows a declaratory judgment. But it wasn't specifically in the context of the finality. But the question then becomes whether or not a finding of an unlawfulness has to occur before the Court can make a vacatur ruling. And as Judge Friedland just points out, in all C value, we did have a finding that the rule that had been promulgated was arbitrary and capricious. That's correct. And that's the merits question presented by my friend, Mr. Sibley. But I guess the question I'm asking you is, I'm just not aware of any other instances where vacatur has been ordered that didn't have as a precondition a finding of unlawfulness. And that does seem to track the administrative review or the judicial review provisions under the APA as to when federal courts can get involved. I don't necessarily disagree, Your Honor, but I do think that bears more on the merits of the issue presented rather than on the finality part. Except that in all C, it's not crystal clear, but there's a long paragraph that says, although not without exception, vacatur of an unlawful agency rule normally accompanies a remand. And there's a discussion of a bunch of cases where there was a finding of unlawfulness and then a vacatur. And then at the end, it says, we accordingly conclude that we lack jurisdiction. So it seems to me that it is kind of tied to that merits determination. I would respectfully disagree, Your Honor. I think the reading of that is the court was showing that vacatur normally occurs with a remand. So it can't be the type of thing that would convert a remand order into a final, appealable order. Because if it were, I think that's the major... But it's like the tail wagging the dog. Why don't we just look at all C and say all C is only about cases in which there's a merits determination and a remand order. And in those situations, the remand is like the tail on the merits. Here, we don't have merits. So the only thing we have is the vacatur. So it's like a totally different type of setting. And so all C doesn't apply at all. What's wrong with thinking of that? Well, that might be one way to erect a limiting principle to prevent a situation where, as a result of this court's decision in this case, every remand order suddenly becomes appealable, so long as the litigant is challenging the provision that specifies whether the remand is with or without vacatur. But I don't think that's a fair reading of all C, because all C did list a three-part test for finality. And none of the three prongs require a determination on the merits, necessarily, for a finding of finality. But don't they kind of assume that there was one? Well, maybe because in that case, there was a merits determination. I mean, that's true. That was the fact of that case. But the analysis there wasn't really linked to the merits determination, except to see if it somehow dictated how the proceedings on remand. Well, counsel, looking at the same page from the language Judge Graber quoted to you, we also said in all C, thus the remand order does not have the practical effect of an injunction for purposes of section 1292A1. But here, it really does have the practical effect of an injunction, does it not? Well, Your Honor, we're now at oral argument, and the interveners didn't make that argument in their opening brief. They didn't make it in their... Well, I know. But we're trying to figure out whether all C values that approach. We always have jurisdiction to determine our jurisdiction. Yes. If we have jurisdiction, we're obliged to exercise it. So we can look at that regardless of whether it was raised. Well, we do cite authority in our brief to the point that arguments in favor of jurisdiction can be forfeited. But putting that aside, let's just get to the... An injunction is something that commands or forbids a party from taking action. And this remand order doesn't do that to the interveners. Vacating the rule prevents the rule from applying to the permits that are otherwise being sought in the interim. But, Your Honor, the Alcee Valley Court addressed that exact issue and said that's not enough to make the vacature order tantamount to an injunction, especially against the interveners. They haven't identified a specific action that the vacature order either prohibits or requires. The rule that was vacated, as I understand it, basically put some time limitations on the act, the Clean Water Act, so that if a tribe, for example, didn't respond within a year, then the response was deemed waived and that sort of thing. That's correct. It had a lot of provisions to the 2020 rule. One of them addressed this waiver component. And I'm paraphrasing now because the rules are detailed. But the 2020 rule essentially authorized EPA to come up with a reasonable period of time within which the state could certify. Right. Because otherwise it was just sort of, I guess, from the intervener's standpoint, it was open-ended and it was delaying projects and so on because they couldn't get an answer out of the regulators. I mean, that's the allegation. There was a hard stop in the statute of one year. So, I mean, our view, we don't agree that there are these egregious consequences. OK. Could I just ask, so you talked a bit about having a new rule coming soon. Do you think this case is going to be moot if we don't decide it before? Yes, it would be moot. And it would not be capable of repetition yet evading review because even though the interveners say that, well, if you don't take this important issue now, it will never be subject to judicial review. Well, that's wrong. There are three avenues where it could be subject to review. One, if there's remand with vacature in this scenario and we appeal, the government, then a private party could also appeal and challenge vacature. Two, if the vacature is tantamount to an injunction against a private party, then the private party could appeal even if we don't. And three, the private party could ask the district court to certify the remand or this specific issue for interlocutory review. And if the court accepted a petition for interlocutory review, it could be appealed that way. Or perhaps mandamus. I don't know whether mandamus counts. I'm not sure about that. Maybe. But there's at least three avenues. And for capable of repetition yet evading review. It has to be the same parties. Normally. Yes, maybe. But I think what it's going to get at is you have to show that it's a narrow exception and you have to show that the issue will always forever evade review. And they can't make that showing here. Although, you know, it's not moot today. It would be moot. This case isn't moot now. This issue is not moot now. It would only be moot when the rule. And we should probably rush. Is it your view we should rush? Rush to publish. I have no comment on that. I'm over time. Could I just briefly address the Supreme Court's stay order and the effect of that? Okay. So I don't think the Supreme Court stay order could be read as an opinion on the jurisdictional issue presented briefly because we simply argued in opposition to the stay application that there was not a reasonable probability that the Supreme Court would grant cert on the merits question because there was a possibility that this court would dismiss for lack of jurisdiction. So the merits issue would not be teed up for cert. There would be no panel decision. The most you could say is that the Supreme Court didn't agree that the jurisdictional issue was an obstacle to cert. But there's no way you can read that order as saying, and the court felt that the Alsea Valley rule is wrong or doesn't apply here. So I don't think the Supreme Court's stay ruling changes the analysis here or affects the analysis. So the court should dismiss for lack of jurisdiction. Can I just ask one more question about sort of the mootness point? So it seems like the only thing that matters here really in terms of the intervener's interest in these permits is the time period between when our court would decide and when you have a new rule because there's a stay in place. And maybe even when the Supreme Court decides because there's a stay in place through the appeal and you're going to have a new rule. So the time where anything could change is really very small if you really pursue a new rule. Maybe there will be a month when the appeal is done and the new rule is not out yet. Are there so many permits that there are even permits in that time? I'm not sure of the answer to that question, Your Honor. I apologize for that. But I think just from a higher perspective, we're not talking about a lot of time. So even if there were some permit applications pending, it's highly unlikely that there would be any kind of significant consequences during that limited window. That's the best I can offer on that. Well, there have to be a lot of projects that are currently pending as we speak today that need an NPDES permit or some other type of permit under the environmental statutes that aren't there. I just can't say with certainty. There probably are a significant number. What the range is, I could be happy to submit a 28-J letter if that would be useful information. I know. I'm not sure it's that important. I mean, it only matters if they took more than a year. I mean, it's only this whether there was a withdrawal and resubmission that hasn't like triggered yet. I mean, the number of permits that might be at issue seems like even if there are permits out there in the world, there probably aren't very many. It's hard to imagine that there would be a significant number. That's correct. Thank you. Thank you. Good morning, Your Honors. Kelly Wood, Assistant Attorney General for the State of Washington. I'll be- You need to move the microphone up a little bit because you're taller. Yeah, I may need to move that a little closer. Thank you. I'll be making the presentation on behalf of all plaintiffs today. I do note that Andrew Hawley, my colleague who represents American Rivers, is here to answer any specific questions you might have for the NGO and tribal plaintiffs. But otherwise, I'll be taking plaintiff's time here. Your Honors, we're here today because EPA invoked the equitable power of the District Court to cut off judicial review of the Section 401 rule and remand that rule back to the agency, an act that is nowhere authorized in the EPA. Well, the EPA didn't ask for vacator though, did it? It did not ask for vacator. It asked to- How did it invoke- Oh, you're saying it invoked the equitable authority by asking for the voluntary remand. Yes, Your Honor. Voluntary remand is a judicially created equitable authority. And once they invoke that authority, that then obligates the courts to fully apply those equities. And accepting intervener's arguments here means that those equities only would work in one direction. But we said in Alsea Valley that the District Court is not required to order vacator, that it's discretionary. It is discretionary, Your Honor. But the cases in this circuit make very clear that really the important part of that inquiry is whether the agency is acting in good faith. And the District Court below certainly understood that, and it began and ended its analysis on that point. We asked to deny remand. That is the relief that we requested. I just want to clarify. Did you mean remand or vacator?  Are you responding to the- I'm just a little- The way I read- maybe I misread it. But I thought what we said in Alsea Valley was that vacator would normally accompany a determination of unlawfulness and a remand. But I don't read Alsea as requiring vacator, even in cases where the underlying rule may be found to be unlawful. That's- I'm sorry. I may have misunderstood your question. You're correct, Your Honor.  that- that, you know, invalid agency actions must be set aside. The court exercises its equitable discretion to say when it doesn't make sense to do so, and usually because- or always because there's some irreparable environmental harm that's going to flow on the other side of that. So I have- are you aware of any situation in which vacator has occurred without a- an or ruling that the agency's action was substantively erroneous or unlawful? Yes, Your Honor. Multiple times at district courts. So several district courts- This court- has the- has this court ever blessed that procedure? No, Your Honor. To our- to our knowledge, no circuit court has- has addressed this question, which is- which is why we think, and I agree with my colleague, Mr. Seible, that this is an important question, and the courts need direction one way or the other. I mean, one thing that bothers me about this is we've got two district courts outside the circuit who didn't order vacator, and our district court did, and in the absence of any appellate authority directing district courts as to what they should do, it sounds to me like we need to clarify the rule. I- I think this court does need to clarify the rule, but I would address those other two decisions. I mean, I think there's a very critical distinction between those two other cases, which involve, you know, a small number of NGO plaintiffs. We- we represent, you know, 20 states in the District of Columbia, along with numerous tribes and NGOs. We were able to put forward a very concrete and solid case on how the rule creates irreparable environmental harm, and- and I'd point you to the record, beginning on page 291, but running all the way to page 214- or 415. But the district court didn't rule on that, and we can't either, can we? The district court did determine that irreparable environmental harms would result from this rule, and- and that is why it felt that it needed to, you know, once- once EPA had invoked its equitable authority, to cut off judicial review and- and sort of, you know- I- I want to clarify that- what you're saying. Is it your position, then, that the district court, in fact, did find the rule unlawful before ordering vacator? No, Your Honor, it's not our position that the court found the rule unlawful. Okay. But what- Then- then- doesn't it have to do that? Your Honor, it does not have to do that. I mean, what- where- what interveners point to for this sort of mandatory, you know, courts must absolutely, under the APA, find an- an- an action invalid before remanding it is- is Section 706- Not before remanding it. They are not happy with the remand. They are not happy with the vacator. I'm sorry, Your Honor, I misspoke. Before vacating it is Section 706. Section 706 is mandatory language, but it is not exclusive. It does not expressly limit a court's authority to set aside an agency action. It only tells the courts that they must do so under certain circumstances. And as we've discussed, that- that doesn't even stop the courts from, when it doesn't make sense because harm's going to result on the other side, to keep an even invalid rule in place. But so you're- you're saying there's a background equitable principle that is left in place by the APA. But can you point to any case in background equity from our country, from England, from anywhere, where an- an executive action or agency action was vacated without a merits ruling? I- I think there are certainly pre-APA cases, and when we cite those in our brief, there's the Ford Motor Company case where the Supreme Court, and it is a- that is a fairly complicated procedural case, but- but it's one where the Supreme Court looked at an agency action on its face. It was- the agency was basically adopting the findings of its subordinates, and instead of sort of making its own decisions when it came to enforcement actions, it sort of got on its face. The courts just sent that back to the agency without actually deciding that that was- But I understood there that the agency wanted vacature, and here the agency didn't ask for vacature. So I'm not sure it's equivalent. Like, I'm asking for a case in equity where a court vacates an administrative action without either the admin- the agency asking for that or finding on the merits that it was invalid. Your Honor, to our knowledge, in this circumstance, there- there is no case out there, but it- it is this- this remedy is really at the- at the very heart of equity, and- and if courts are- if agencies are going to invoke the equitable authority of the court to cut off judicial review, which- which we would argue is equally a pillar of- in the APA- specific statutory language directing when federal courts could step in and interfere with agency rulemaking that had gone through notice and comment rulemaking. And- and your argument, I think, in response to Judge Friedland's question has to be that that equitable authority nonetheless transcends whatever Congress intended when it provided for when federal courts could review agency action. A couple of responses to that, Your Honor. I- we- we assert that the Congress did not clearly, which it must do so. If the- if Congress wants to abrogate the court's equitable authority, it must do so clearly. An argument is- But if you can't point to a case that shows there's this equitable authority, it's hard- where do we get- I don't know. I'm not sure what we use to say this equitable authority is always out there in equity if there's no case. Well, Your Honor, there's also no case that- that had determined that the courts can cut off APA judicial review on an agency's equitable ask for voluntary remand. Well, so this is- I mean, so I think if you lose this case, it seems like it should be a factor in whether to remand whether there's irreparable harm in the meantime. And maybe there shouldn't have been a remand in this situation if the judge thought, really, we need to reach a merits ruling. And maybe you could have come to our court and said, we need a stay of this rule because it's- there's an emergency here. I mean, all those things are possible, right? If the rule changed- if the framework is that you lose this case. Certainly, Your Honor. And we ask that this court absolutely- if it rules that the vacator was improper in this case, we think that it is appropriate for the court to let the district courts know. Because as I've stated, they tend to start and finish this analysis with the question of only whether the agency was acting in good faith. And that's what the court below did. And so we think this court needs to let the district courts know that when you receive these requests for voluntary remand, and it looks like substantial irreparable harm's going to- going to come out the other end of that remand, you need to take that harm into account, deny remand, and get to the merits. Give plaintiffs their day in court. Yeah. Counsel, I- I'm just having a hard time in the face of the language of Section 706, which, as you know, delineates the scope of review. It says, the reviewing court shall hold unlawful and set aside agency action findings and conclusions found to be arbitrary, capricious, or abuse- an abuse of discretion, or otherwise not in accordance with law. And that's a pretty clear articulation of when federal courts can intervene. Your Honor, I- I agree. It is a clear articulation of when an agency action should be set aside. What- what I think the district courts struggled with below, and what- what all the courts that have- that have done this have looked at, is that despite that mandatory- they pointed to cases like the California Communities Against Toxics, there's the Idaho Farm Bureau versus Babbitt Pollinator Stewardship Council, other cases where- where this court has found an on- on substantial grounds and has kept that rule in place. So I- I think the courts say, look, if- if the- if we have the authority to keep an invalid rule in place to prevent irreparable harm, we must have the converse authority. We must be able to vacate a rule in the- when an agency asks for it on remand, when it will cause irreparable harm, as- as we've shown it will in- in this case. But isn't that the pitch that you need to make to EPA, so that it's the agency that is asking the court to- for vacater, and- and you didn't have that here. That is- that is certainly a case we made to EPA, Your Honor. I mean, we- to EPA. We- we made clear that we did not want the rule remanded. We wanted to get to the merits. That was the primary- that is- that was our primary response to the motion to vacate. We- we did not- or the motion to- to remand to the agency. We requested that that remand be denied, so that we could get to summary judgment. And- and of course, the court felt bound enough by the existing case law that it really just asked, you know, said, hey, well, EPA's here in good faith, so we should go ahead and grant that motion. Counsel, the- I'm going to ask you this- a similar question to what your colleagues have been responding to, and that is the practicalities here. Um, what- on- on the ground, what is going to be different if the vacater remains or doesn't remain in view of the EPA's representation that a new rule is about to be promulgated? Thank you, Your Honor. And I think to answer an earlier question you had of my- my colleague, uh, the- the- there are thousands of these requests that come in around the nation every year, thousands upon thousands. And so, regardless of what short period of time we have between, you know, whatever time we can resolve this case and whenever EPA issues a new rule, there will certainly be projects that will be subject to the old rule, or the 2020 rule. And- and the import of that is the 2020 rule and the core of- of what- how we argued that is it- it severely limits the scope of what plant- what states and tribes can look at when it comes to addressing water qualities from these often huge federally approved projects like hydroelectric dams. Or timing. I'm- I'm sorry, Your Honor. Scope or timing. Scope, Your Honor. Also timing, but it was an attempt to sort of- sort of rush those decisions out. Because of the timing thing about the withdrawals and resubmissions, it's like there must have been a backlog that got cleared out when this rule went into effect. It's in effect right now because of the Supreme Court. So, it seems like it's the scope that is really the issue. The scope is what causes the harm. Because it prevents states and- and, you know, we had put- pointed out there the- it's things like hydroelectric dams that are- that are licensed in Washington. Anadromous fish have a hard time with temperature. And- and we are losing the temperature bat- battle in that regard from development and climate change. So- so what is the bottom line that you seek? It is a briefing on the merits in the district court then? Or- If- if this court disagrees that- that vacator was appropriate, we- we ask that- that the court vacate the order in its entirety and direct the district court to proceed to summary judgment as- as soon as possible. But as a practical matter, that doesn't really work anymore, right? So, I mean, going forward, if you lose this and the rule is that you can't vacate without a merits ruling, it seems like it should be a factor in thinking about whether to remand at all. But in this case, at this point, I don't see how the district court is going to get to summary judgment before there's a new rule anyway, right? I- I- I think the district court certainly could. We've been prepared to get to summary judgment for- for quite some time now. I think the issues are- are fairly narrow. I mean, it really comes down to the scope. That's the core of the rule that we want to argue. And- and this isn't the situation- this really is a purely legal rule. There's no- the record is fairly succinct. There's no real scientific evidence that goes into this rule. It really is sort of a policy call. And- and we have a fairly straightforward argument that, look, the Supreme Court's already decided this scope issue in PUD number one. And so the fact that- that EPA made no bones about the fact that it was attempting to abrogate that decision, you know, that's a fairly isolated question we think the court could answer in a- in a fairly quick way. And I think- I think my colleague may have- If we decide that we have jurisdiction to review this question and we grant you the relief that you're asking for, the intervener defendants would have the right, presumably, to petition for certiorari. And the Supreme Court might well grant it. We don't know. So you're not going to be back in the district court any time soon. Well, that- that is a potential, Your Honor. And I assume they will seek cert if- if this court upholds the decision. But a couple of things to that point. One, there's- there is no, you know, banking on what the Supreme Court will or will do. You know, it's- that's not always a safe bet. And so it is certainly conceivable that the court would- They made it pretty clear in the state order. They're going to have the final word if there is a petition for certiorari. Well, it's unclear. You know, that writing may have been on the wall, but we- we don't know. There was no basis for- for- No, I'm just saying that if we do decide we have jurisdiction, their order says that the stay will remain in- in place until they dispose of- of any petition for certiorari that may be filed. That- that is correct. That is what- the stay is in place until either- either this court vacates the lower court's decision or- or the court grants cert or- Yeah, I think it's and rather than or if I'm reading the- if I'm reading their state order correctly. Certainly. I see I'm a minute over time. I'm happy to answer any other questions the court has. I don't have anything more. Thank you, Your Honor. Thank you, Counsel. We have some time left for rebuttal. Thank you, Your Honor. I'll start first with- with jurisdiction. And I- just to make sure our point is clear, that the separable legal issue here resolved by the district judge was whether district courts have the authority to vacate without finding an action unlawful. And that is- I don't really understand that. I know you argued that, but it seems like all you can ask for is the rule. You don't- I mean, this like abstract question about district court authority doesn't affect your clients one way or the other. You just want the rule back for whatever reason, right? Well- well, it certainly affects our- our clients because if that- if the- if the judge has that authority and indeed chose to exercise it here, it scotches a two-year rulemaking that my clients invested substantial money in. I understand, but what- what you want us to say is the rule needs to be back in place pending the remand. It- I mean, if- I- I just don't really understand how the abstract question is separate from what you're really seeking is the rule back in effect. Well- Let me ask it a different way. The- the plaintiffs were arguing that if vacator was improper, the whole thing should go back to the district court to decide the merits right now, and that might or might not turn out to be in your client's favor. So, is that okay with you to have the whole thing looked at on the merits by the district court if the vacator was improper? Well, as we noted in our- I think the government noted and we noted in our- in their response brief and we noted in our reply brief, the- the plaintiffs in the court below did not file a notice of appeal. They did not appeal any aspect of the court's order. I would note further that they did not- they- But you have appealed the order. You have a particular argument about it, but the order is in front of us if there's jurisdiction, not just a little piece of the order that you happen not to like. Don't we have- if we have jurisdiction to consider the final order, then don't we have jurisdiction to consider it in its entirety and figure out what the court should have done if it was something different? I believe this court has held that- that the failure to fire- file a notice of cross-appeal is not jurisdictional, so that would allow the court to address the question. We would certainly preserve our position on that, which is that it should be jurisdictional if there is a circuit split on that question. But- but certainly under this court's precedent, you could send the entire order back and- and direct Judge Alsup to proceed with- with merits briefing. My- my friend, Mr. Wood, has noted- made some points about irreparable harm, and noted how that- that those arguments were presented to- to Judge Alsup. What- what is noteworthy is that the plaintiffs, not in any of these three cases, not in South Carolina, not in Pennsylvania, none of them filed a motion for a preliminary injunction to prevent the rule- prevent the rule from going into effect. Now, we can- we can surmise why that might be the case, why they may not want to have- have filed that motion. Well, they're saying that there weren't- the plaintiffs were not very well organized as they are, and- and didn't make the same arguments that they made to Judge Alsup. Well- well, certainly the- the plaintiffs- well, set aside Pennsylvania and South Carolina, the plaintiffs in this case could have filed a preliminary injunction motion, but did not. And so- and- and these claims about irreparable harm are arising, just if- if you'll indulge me to dive a little bit into the weeds of district court process, EPA files a motion for voluntary remand without vacator. A response is filed that says, no, no, go ahead and vacate it. Go ahead and vacate the rule, and here's why, because here's all these bad things that are going to happen to us. We're- we're- that's not- we would argue that's not the right procedural vehicle for addressing that, and- and indeed under the standard for- for remand without vacator, these- these questions of- of irreparable harm are not even on the table based on the- based on the precedent that governs there. I'm a little bit confused. Say the plaintiffs had sought a preliminary injunction. If EPA was going to ask for remand anyway, what- why would we be in a different situation? So if the- so the- the- the plaintiffs are in the court below said that they would suffer all of this irreparable harm. I- I- we challenged that because they didn't seek a preliminary injunction motion, right? The rule went into effect, and it was in effect for- for eight months before EPA filed its motion for remand without vacator. But in terms of whether we would still be presented with this remand question, and what- whether- whether it's final, and whether the district court could vacate, all of that would still be the same, whether it was a preliminary injunction or not, right? Well, if the court had issued a preliminary injunction, we would- Then we'd have a merits ruling. But- but just the filing of the request, because- because presumably EPA would have responded the same way, which is remand this. Well, it depends on when it was filed, right? If they had filed it at the outset of a case, which is when people tend to file motions for preliminary injunction, the- the preceding administration's EPA likely would have opposed it, I would think. I- I don't know. They would want to- have wanted the rule to go into effect. We don't- we don't confront the- the need, the exigency that brings us here for remand without vacator until the new administration takes office, which occurred some, you know, four- four or five months after the case had been initiated. I see. Um, in terms of- just very quickly, in terms of- in terms of scope, uh, my friend, Mr. Wood, noted that the Supreme Court- sort of the Supreme Court resolved this question about scope in the- in the PUD 1 case. That's not entirely correct. It's not correct at all. They noted that it was a reasonable interpretation. It was not the exclusive one. And- and the- the authority that EPA relied on here is the Brand X case from the Supreme Court, which notes that where, um, the statute is ambiguous, the agency can come back and even- even in a way that the Supreme Court, um, unless the Supreme Court has concluded the statute's unambiguous, which- which did not occur here. That's a small point, but an important one in evaluating, um, what- what- what occurred here. Um, I see I'm at the- at the end of my time. I'm happy to answer any questions. I don't have any. Um, for the- for the reasons we, um, have articulated, we ask that the- the district court's, um, vacator order be vacated. Thank you. Thank you to all of you for the excellent advocacy in this very complicated case. Yeah. This case is submitted, and we are adjourned for the day. All rise.
judges: GRABER, TALLMAN, FRIEDLAND